# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PUBLIC UTILITY SERVICE CORP.,
 Plaintiff,

  v.

LEGGETT & PLATT, INC.,
 Defendant.

: : : : : : : : : :

CIVIL ACTION

NO. 08-1860

**FILED**

OCT 1 6 2008

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**Memorandum and Order**

YOHN, J.

October _16_, 2008

Plaintiff Public Utility Service Corporation brings this breach of contract action against defendant Leggett & Platt, Inc. Currently pending before the court is defendant's motion to transfer venue to the Western District of Missouri pursuant to 28 U.S.C. § 1404(a). For the reasons discussed below, defendant's motion will be denied.

## I.   Factual and Procedural Background

Plaintiff is a Pennsylvania corporation with a principal place of business in Pennsylvania. Defendant is a corporation with a principal place of business in Missouri.[1] At an unknown time, but presumably in 2003, one of plaintiff's salesmen contacted defendant's employees at defendant's York, Pennsylvania facility to offer plaintiff's services to defendant.[2] Plaintiff's employees subsequently met with defendant's employees in York to discuss the various services

_____

[1] None of the documents before the court reflect defendant's state of incorporation. However, neither party has disputed that this court has diversity jurisdiction over plaintiff's claims, so the court presumes for purposes of this motion that defendant is not a Pennsylvania corporation.

[2] Defendant has six facilities in Pennsylvania.

1

plaintiff could provide defendant.  After this meeting, plaintiff's president, Thomas Dunn, called

defendant's energy manager, Steve Myers, who was located at defendant's headquarters in

Carthage, Missouri.  Dunn and Myers discuss plaintiff's services and usual terms, and the two

negotiated the terms of an agreement over the phone.  Dunn sent a written agreement

memorializing these terms to Myers, and Myers signed the agreement in Missouri.[3]  Myers then

sent the signed contract back to Dunn, who initialed the contract in Pennsylvania on October 20,

2003 and mailed a copy of the agreement back to Myers.

Under the terms of the agreement, plaintiff agreed to analyze the rates and charges

applicable to defendant's utility billings and make recommendations to defendant for possible

savings, credits, or refunds.  Defendant agreed to pay plaintiff 40% of the savings resulting from

plaintiff's recommendations for a period of 60 months beginning with the first month that

defendant realized savings.  Defendant also agreed to pay plaintiff 40% of each credit or refund

defendant received as a result of plaintiff's recommendations.  Defendant mailed the relevant

billings to plaintiff, and plaintiff audited and analyzed all of defendant's billings at plaintiff's

Exton, Pennsylvania office.

Plaintiff alleges that as a result of its audit and recommendations, defendant realized a

monthly savings of at least $17,361.31 on its voice and data contract with AT&T.  When plaintiff

recommended that defendant renegotiate its voice and data contract, defendant responded that it

was already in the process of renegotiating the contract.  Plaintiff asked for documentation to

verify this, and defendant promised that it would provide the information within three days and

---

[3]Myers's signature is not dated, so it is not clear when he signed the agreement.

that if it could not provide the documentation, it would pay plaintiff in full.  Plaintiff asserts that defendant never provided the documentation and has not paid plaintiff.

Plaintiff also alleges that an audit of defendant's telecommunications billings showed approximately $26,000 per month in overcharges and billing errors.  After the audit, plaintiff recommended that defendant (1) implement changes that would result in monthly savings of $9,084.93, which defendant subsequently implemented; (2) apply for and receive credits from AT&T for past overcharges through defendant's Frame Relay Network; (3) apply for a $60,000 refund from AT&T for past overcharges on its 800 Masterline service, which resulted in defendant receiving a credit of $12,477.94 and ongoing monthly savings of $762.25; (4) eliminate thrifty billing, which was resulting in monthly overcharges of $2,497.63 and obtain a credit or refund for the past billings; and (5) convert its local telecommunications services to AT&T, which would result in a monthly savings of $4,270.91.  Finally, plaintiff alleges that defendant implemented its recommendations but did not pay plaintiff 40% of the savings, refunds, and credits it received as defendant agreed to do under the contract.  Defendant terminated its relationship with plaintiff on February 3, 2005.[4]

Plaintiff filed a Writ of Summons in the Court of Common Pleas of Chester County on March 13, 2007.  On April 2, 2008, plaintiff filed a complaint with the above allegations and asserted a claim for breach of contract and a claim for quantum meruit or unjust enrichment. Defendant removed the case to the Eastern District of Pennsylvania on April 21, 2008 and filed a motion to transfer venue under 28 U.S.C. § 1404(a) on May 2, 2008.

---

[4] During the course of the contract, plaintiff's representatives traveled to Carthage, Missouri to discuss plaintiff's services under the contract.

3

## II.   Discussion

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision to grant a motion for a change of venue lies within the discretion of the district court, but the motion should not be liberally granted. *Shutte v. ARMCO Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). The defendant bears the burden of proving that venue is proper in the transferee district and that convenience and justice would be served by transferring the action to another district. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). "There is nothing . . . in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue." *Van Dusen v. Barrack*, 376 U.S. 612, 633-34 (1964); *see also Shutte*, 431 F.2d at 25 (reasoning that "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.").

The Third Circuit has enumerated several public and private factors for district courts to consider when determining whether to grant a motion for a transfer of venue. *Jumara*, 55 F.3d at 879. The private interests to be considered include:  (1) plaintiff's choice of forum; (2) defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial conditions; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable at trial; and (6) the location of the books and records, similarly limited to the extent that files could not be produced in the alternative forum. *Id.* The public interests to be considered include:  (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive;

(3) the local interest in deciding local controversies at home; (4) the public policies of the fora; and (5) judicial familiarity with the applicable state law. *Id.* at 879-80. While examining these factors, courts must be mindful that the plaintiff's choice of forum is generally entitled to great weight. *Id.*

The first consideration under § 1404(a) is whether the case could have been brought in the Western District of Missouri, where defendant seeks to have the case transferred. Defendant asserts that its principal place of business is in Carthage, Missouri; that this was also its principal place of business at the time this action commenced; and that it has conducted and continues to regularly conduct business in Carthage. Carthage is located in Jasper County, Missouri, which in turn is located in the Western District of Missouri. Thus, defendant "resides" in the Western District of Missouri and is subject to personal jurisdiction there, and the Western District of Missouri is an appropriate venue for this case. *See* 28 U.S.C. § 1391(a)(1) (providing that in diversity action, venue is appropriate in "a judicial district where any defendant resides, if all defendants reside in the same State"); § 1391(c) (providing that "a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced"). The case therefore could have been brought in the Western District of Missouri,[5] and I must weigh the public and private factors to determine if defendant has satisfied its burden of showing that convenience and justice would be served by transfer to that venue.

A.   **Private Factors**

The first two factors look at the parties' choices of forum. "It is black letter law that a

---

[5] Plaintiff acknowledges that it could have properly field this lawsuit in the Western District of Missouri.

plaintiff's choice of a proper forum is a paramount consideration in any determination of a

transfer request, and that choice should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal

alterations and quotation marks omitted).  Plaintiff's chosen forum is Pennsylvania.  Plaintiff

resides in this forum and, as discussed below, performance of the underlying contract took place

here.  Thus, plaintiff's choice is entitled to great weight, and the first two factors on balance

weigh against transfer.  *See Jumara*, 55 F.3d at 879; *see also Moy v. Rose View Center*, No. 05-

6300, 2006 WL 3511687, at *5 (Dec. 5, 2006) (concluding that first two factors did not support

transfer because plaintiff resided in the district in which it chose to file the lawsuit).

Defendant asserts that the third factor, where the claim arose, weighs in favor of transfer

because all of the events giving rise to plaintiff's claims took place in Carthage, Missouri:

defendant contends that the agreement arose in Missouri and the underlying purpose of the

agreement was to analyze billings that were transacted in Missouri.  Plaintiff argues that this

factor weighs against transfer because plaintiff's employees did all of the work contemplated by

the contract in Pennsylvania, plaintiff's employees analyzed the billings of defendant's six

Pennsylvania facilities and no others, and defendant's payments were due at plaintiff's business

in Exton, Pennsylvania.  Plaintiff's arguments are more persuasive.  When looking at where a

claim for breach of contract arose, courts within this circuit "generally look to the place of

performance of a contract." *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438,

444 (E.D. Pa. 1999); *see also Gen. Motors Corp. v. Schneider Logistics, Inc.*, No. 06-2195, 2006

WL 2987785, at *5 (E.D. Pa. Oct. 17, 2006); *Hudson Marine Mgmt. Servs., Inc. v. Thomas

Miller Inc.*, No. 05-5197, 2006 U.S. Dist. LEXIS 47900, at *5-6 (D.N.J. July 13, 2006).

Pursuant to the agreement, plaintiff's employees conducted the auditing and analysis of

defendant's billings in plaintiff's Pennsylvania office and audited the transactions of six of

defendant's Pennsylvania facilities; thus, performance of the contract took place in

Pennsylvania.[6] Furthermore, plaintiff expected to be paid in Pennsylvania, and it is defendant's alleged failure to pay under the agreement that specifically gave rise to plaintiff's claims. Factor three therefore does not support transfer.

The fourth factor looks at the parties' relative physical and financial conditions. *See Jumara,* 55 F.3d at 879. Defendant contends that it would be inconvenient for it to litigate this case in the Eastern District of Pennsylvania because it would be expensive. For the same reason, however, plaintiff would be greatly inconvenienced by litigating the case in the Western District of Missouri. Defendant is a Fortune 500 company, does not refute the contention that it has greater financial resources than plaintiff, and does not assert that it would be financially prohibitive to litigate the case in Missouri. Plaintiff has eight employees. Because the fourth factor addresses the parties' relative physical and financial conditions and because defendant has greater financial resources, this factor also does not support transfer.

Under the fifth factor, the court "focuses on the convenience of non-party witnesses." *Gen. Motors Corp.,* 2006 WL 2987785, at *6 (citing *Hillard v. Guidant Corp.,* 76 F. Supp. 2d

---

[6]In its untimely reply, defendant contends that plaintiff has not proven that plaintiff analyzed the billings of defendant's Pennsylvania facilities, but plaintiff included an affidavit from its president attesting that plaintiff analyzed the billings of defendant's Pennsylvania facilities, so plaintiff has provided proper proof for purposes of this motion. Moreover, defendant does not actually refute plaintiff's contention that plaintiff analyzed the billings of defendant's Pennsylvania facilities; rather, it attempts to divert the court's attention by focusing on the irrelevant fact that employees in Missouri had to give plaintiff permission before plaintiff could analyze the billings from defendant's Pennsylvania facilities. Finally, it appears from the record that the majority, if not all, of the billings plaintiff analyzed were from defendant's Pennsylvania facilities.

566, 570 (M.D. Pa. 1999)).  Generally, "the convenience of the nonparty witnesses is only an issue to the extent that the witnesses may actually be unavailable for trial, [but] it is sufficient for purposes of [the] venue transfer analysis if the witness is not subject to a Court's subpoena power."  *Zoetics, Inc. v. Yahoo!, Inc.*, No. 06-108, 2006 WL 1876912, at *4 (D. Del. July 6, 2006) (internal quotation marks and citations omitted).  Here, the court has the power to subpoena anyone located within the court's judicial district or within 100 miles of the courthouse.  Fed. R. Civ. P. 45(b)(2); *see also Zoetics, Inc.*, 2006 WL 1876912, at *4.  Thus, the relevant inquiry is whether there are nonparty witnesses who could not be subpoenaed.

Each party has listed the employees who may testify at trial in an attempt to show that it has more witnesses than the other party.  However, because the employees are party witnesses, the convenience of these witnesses is not the proper focus.  Furthermore, courts generally conclude that the actual number of witnesses each party would present is not determinative under this factor.  *See, e.g., Wallace v. Ormsby Trucking, Inc.*, No. 04-1652, 2005 WL 1021550, at *2 (E.D. Mo. May 2, 2005) (reasoning that "[s]heer numbers alone do not accurately reflect the full extent of the 'witness convenience' factor" and that the court should consider the nature and quality of testimony and whether it can compel nonparty witnesses to testify); *MLR, LLC v. Kyocera Wireless Corp.*, No. 04-7044, 2005 WL 818399, at *2 (Apr. 6, 2005) (reasoning that "[d]efendants will not be granted a transfer merely by presenting a long list of witnesses and claiming their inconvenience in testifying in the challenged forum"); *HighJump Software, Inc. v. SCS Refrigerated Servs., LLC.*, No. 02-1376, 2003 WL 465738, at *4 (D. Minn. Feb. 14, 2003) (noting that it "is not a contest between the parties as to which one presents a longer list of witnesses located in the potential districts").

The only nonparty witness identified by defendant is Steve Myers, who was employed by defendant at the time the contract was formed but is no longer employed by defendant and has relocated to Oklahoma City, Oklahoma. Defendant asserts that because Myers lives approximately 230 miles from Carthage and 1160 miles from Philadelphia, it would be more convenient for Myers if the case were litigated in the Western District of Missouri. Defendant's argument is not persuasive because it has not asserted that Myers would be unavailable to testify in Pennsylvania, and that is the relevant consideration. More importantly, even if the case were litigated in the Western District of Missouri, Myers would still be outside the Missouri court's subpoena power and could not be compelled to testify if he chose not to do so. On the other hand, plaintiff has identified three of its former employees who reside in the Eastern District of Pennsylvania, and these nonparty witnesses can be compelled to testify in the Eastern District of Pennsylvania, but not in the Western District of Missouri. The fifth factor therefore does not support transfer.[7]

Defendant did not address the sixth factor, which considers the location of the books and records, but only to the extent that the files could not be produced in the alternative forum. *See Jumara,* 55 F.3d at 879. As plaintiff points out, defendant has already mailed the relevant billing records to plaintiff in Pennsylvania for plaintiff to audit. It therefore appears that any additional records that are needed could also readily be sent to Pennsylvania, and this factor does not support transfer. In sum, an analysis of the private factors weights against transfer and demonstrates that defendant has not met its burden of showing that convenience and justice

---

[7]Although the quality of information a witness could provide is also a consideration, neither party has identified the substance of the testimony any of their witnesses would provide.

would be served by transferring the case to the Western District of Missouri.

**B.    Public Factors**

Neither party addressed the public factors that can be considered; thus, the court's analysis of these factors will be brief. Defendant has not identified anything that would make enforcing a judgment from this court in the Western District of Missouri difficult, so the first factor does not support transfer. While a trial in the Western District of Missouri would be less expensive to defendant than a trial in the Eastern District of Pennsylvania, defendant has not demonstrated that it would be more expeditious to transfer the case and has not fully demonstrated that the second factor supports transfer.[8] Additionally, because the alleged financial harm occurred in Pennsylvania, Pennsylvania has an interest in having the controversy decided here, and the third factor does not support transfer. Defendant has not identified any Missouri public policy that would be served under the fourth factor, so this factor also does not support transfer.

Finally, the fifth factor, judicial familiarity with the applicable state law, does support transfer because the elements of a breach of contract claim are the same in both Pennsylvania and Missouri. *Compare CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (listing the elements of a breach of contract claim under Pennsylvania law as "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages"), *with Moravac v. Dave Littleton Ford, Inc.*, 838 S.W.2d 151, 153 (Mo. Ct. App. 1992) (explaining that for a breach of contract claim under Missouri law, the plaintiff must

---

[8] Even if this factor conclusively supported transfer, it would not change the outcome of this motion because of the number of factors that weigh against transfer.

show "the existence of a contract or agreement and the terms of that agreement, that the plaintiff performed or tendered performance, that the defendant did not perform, and that the plaintiff was thereby damaged"). The considerations for unjust enrichment claims are also substantially similar under both states' laws. *Compare Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999) (listing the elements a plaintiff must prove for unjust enrichment under Pennsylvania law as "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value" (citation omitted)), *with Mays-Maune & Assocs., Inc. v. Werner Bros., Inc.*, 139 S.W.3d 201, 205 (Mo. Ct. App. 2004) (listing the elements of an unjust enrichment claim under Missouri law as "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable"). Thus, although it is not yet been determined which state's law applies to plaintiff's claim, the similarity between the two states' laws does not support transfer on the ground of judicial unfamiliarity with state law.

## III.    Conclusion

Plaintiff has chosen a venue in which it resides and performance of the underlying contract took place, and its preference is entitled to great weight. An analysis of the private and public factors enumerated by the Third Circuit shows that defendant has not met its burden of demonstrating that convenience and justice would be served by transferring the action to the Western District of Missouri. Defendant's motion to transfer venue will be denied accordingly.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PUBLIC UTILITY SERVICE CORP.,<br>    Plaintiff, | : <br> : <br> : |
| v. | :      CIVIL ACTION <br> : <br> :      NO. 08-1860 |
| LEGGETT & PLATT, INC.,<br>    Defendant. | : <br> : <br> : <br> : |

### Order

AND NOW, on this _16_ day of October 2008, upon careful consideration of defendant

Leggett & Platt, Inc.'s Motion to Transfer Venue under 28 U.S.C. § 1404(a) (Doc. No. 8),

plaintiff's response, and defendant's reply thereto, IT IS HEREBY ORDERED that defendant's

motion is DENIED.

William H. Yohn Jr., Judge